## GENERAL ELECTRIC CREDIT CORPORATION, Plaintiff,

### v.

## John J. CONTRUCCI and Elizabeth Contrucci, his wife, Defendants.

### Civ. A. No. 65–357.

United States District Court,
W. D. Pennsylvania.

Oct. 6, 1971.

Thorp, Reed & Armstrong, Pittsburgh, Pa., for plaintiff.

McCrady & Nicklas, Pittsburgh, Pa., for defendants.

### OPINION and ORDER

McCUNE, District Judge.

This is an action to recover from defendants the rental allegedly due on a lease of bowling equipment. The law of Massachusetts applies.

The complaint and amended complaint alleged that on August 17, 1962, the defendants, who then owned a bowling alley in Allegheny County, entered into a lease with a manufacturer of bowling equipment by the name of Bowl-Mor Company, a Delaware Corporation with headquarters in Massachusetts. The lease covered sixteen automatic rubber-duck pin setting machines which were rented for a period of ten years at a rental of $144,000.00 payable in equal weekly installments following an initial payment of $1200.00.

A few days later (August 20, 1962) Bowl-Mor assigned the lease to General Electric Credit Corporation (herein called G.E.) and very shortly the defendants defaulted. It was alleged that by October 8, 1962, they were in default although between October 8, 1962, and June 19, 1964, a total of $5297.00 was paid of the total due, alleged to be $25,835.20.

On June 19, 1964, the machines were repossessed and on July 17, 1964, they were sold at public sale (after notice and advertisement of the sale) for $19,200.00 to G.E.

The complaint demanded $119,652.62 which was the total rental less the $19,-200.00 received at public sale together with the $5297.00 received in rental payments (minor expenses were also claimed which prevents an exact balancing of the aforesaid sums).

The Answer averred that the machines were not satisfactory, failed to operate properly, were not put in operable condition in spite of complaints to Bowl-Mor and that the defendants had instructed G.E. to remove the machines.

Pursuant to the request the machines were removed by Bowl-Mor (not G.E.) and that Bowl-Mor was acting as an agent of G.E. It was alleged that the defects vitiated the lease and the rental had been paid for the months during which the machines had been used, that G.E. through Bowl-Mor had acted pursuant to the request to remove the machines and had consented to a cancellation of the lease by removing the equipment.

A counterclaim was included for $5900.00 which had been expended, it was alleged, to repair and maintain the equipment while it was in use.

The reply to the counterclaim asserted that G.E. had not duty to remedy defects in the machinery because the lease permitted assignment by Bowl-Mor, while providing that the assignee would not be liable for any of the Lessor's obligations. Further, G.E. took the equipment only because defendants had threatened to put it in storage at G.E.'s expense if it were not taken back and G.E. had notified defendants before they took it that they would sell it and hold defendants for any deficiency.

The defendants of course denied that they ever acquiesced in the plan of G.E. to sell the machines or that they would be liable for any deficiency.

An amended answer set forth an additional defense, i. e., that G.E. in an agreement dated July 23, 1964, permitted Bowl-Mor to repurchase the equipment and took a demand note from Bowl-Mor for the amount due G.E. and the demand note held by G.E. had been paid in full by Bowl-Mor and therefore G.E. had no cause of action against the defendants. The contention was that G.E. had renegotiated the transaction with Bowl-Mor after the default occurred and had delivered the equipment to Bowl-Mor and had taken a new note from Bowl-Mor and had been paid in full.

We tried the case non jury and in our opinion the last contention was supported by the evidence. If an assignee of a contract fails to collect from the obligor, but thereafter receives satisfaction from the assignor, is he barred from asserting the claim against the obligor? This is the basic issue in the case.

The facts presented at trial were as follows:

When Bowl-Mor (which was then selling a great deal of bowling equipment during the popularity of that sport some ten years ago) assigned its lease to G.E. on August 20, 1962, it received $97,924.-00. The assignment contained this clause:

"We warrant and guarantee the payment promptly when due of the amount of each and every sum payable under said lease, without defense, set-off or counterclaim, and the payment of the entire unpaid balance in the event of non-payment by lessee of any such sum at its due date or of any other default by the lessee without first requiring assignee to proceed against the said lessee."

It is apparent that Bowl-Mor (lessor in the lease and assignor in the assignment)

sold its lease to G.E. with recourse. Bowl-Mor guaranteed payment to G.E. not only in the assignment but in a basic security agreement between the two corporations.

At this time G.E. was buying all or almost all of Bowl-Mor's "paper" pursuant to an agreement between Bowl-Mor and G.E. dated December 29, 1961, (Defendant's Exhibit "E"). This agreement generally provided that if any lessees (obligors) defaulted G.E. could demand cash equal to the deficiency due. From the $97,924.00 which G.E. paid for the Contrucci lease, G.E. deducted $8946.40 for a reserve fund set up under said agreement and $6177.00 for an insurance premium leaving a net payable to Bowl-Mor of $82,800.00.

After G.E. had repossessed the bowling equipment, G.E. sold the equipment at public sale and bought it in for a net price of $19,050.38.[1] G.E. then made a demand on Bowl-Mor that it repurchase the machinery for cash pursuant to the basic agreement between the companies of December 29, 1961, already referred to, and the provisions of the assignment.

Bowl-Mor was unable to purchase the machinery from G.E. for cash. On July 23, 1964, the two companies entered into a new security agreement under which G.E. transferred the equipment to Bowl-Mor for $95,734.06 and Bowl-Mor gave G.E. a demand note for the same amount designated note No. 11 attached to the new security agreement (testimony of plaintiff's witness Herman Gerte).

The Contrucci account card (Defendants' Exhibit "A") in the possession of G.E. stated that the machinery was repurchased by Bowl-Mor on July 28, 1964, for $95,734.06.

Following the delivery of the demand note to G.E. (Bowl-Mor apparently was in no position to pay cash because of reverses) Bowl-Mor reconditioned the equipment and sold it. Eight of the machines were sold October 9, 1964, for $18,374.93 and the remaining eight machines were sold March 16, 1965, for $20,296.22, leaving a balance due on the demand note of $57,062.91 because the cash proceeds of the two sales were given to G.E.

The $57,062.91 remained due and unpaid until April 29, 1966. At that time Bowl-Mor and G.E. entered into another agreement (Defendants' Exhibit "D") under which G.E. charged to Bowl-Mor's reserve account the balance of note No. 11 (the Contrucci note). (Every time G.E. bought a lease from Bowl-Mor G.E. deducted a small amount of the price and set up a reserve for Bowl-Mor (see basic agreement of December 29, 1961, Defendants' Exhibit "E"). Bowl-Mor owed money on several accounts set forth in paragraph 3 of the agreement of April 29, 1966, which provided that these amounts would be charged against the reserve and considered paid). According to G.E.'s witness Herman Gerte the

---

1. On March 16, 1964, Mr. Contrucci wrote to Bowl-Mor saying that the equipment was unsatisfactory, he wanted it removed and if it were not removed he would have it removed and stored at Bowl-Mor's expense (Plaintiff's Exhibit "3").

On May 25, 1964, G.E. wrote to Contrucci saying the lease was in default, that it had been assigned to G.E., that they would remove the machines, would sell them at public sale, would reserve the right to buy them in and would hold Contruccis for any deficiency in the rental for the total term. (Plaintiff's Exhibit "2").

On June 2, 1964, Contruccis' attorney replied that they would cooperate in having machines removed, that the lease was merely that, what G.E. did with the machines was of no interest but any claim for deficiency would be resisted.

Defendants argued that the repossession which took place on June 19, 1964, was an election of remedies and was a consent to terminate the lease and all claims for rent ceased at that time. Plaintiff argues that it is entitled to the entire balance of rent due. Since the case does not turn on this point we do not discuss whether G.E. made an election and terminated the lease by repossessing the equipment.

Contrucci note was in fact marked "satisfied and paid in full." [2]

At the time the debts were credited against the reserve the Bowl-Mor reserve amounted to at least $267,908.20 because in May of 1966 this figure prevailed (test. of Gerte).

According to G.E.'s witness, Gerte, the note of Bowl-Mor on the Contrucci account was included on Schedule No. 4 attached to the agreement of April 29, 1966, as an item of $185,345.18 called "Deficit due to sale of Used Inventory." Gerte said note No. 11 (which covered the Contrucci account) was marked "paid in full."

Recognizing that Bowl-Mor might have asserted a claim against the Contruccis, we think G.E. has no claim to assert. It had elected to proceed against Bowl-Mor on its recourse agreement and had done so.

G.E. argues that it never received the $57,062.91 in cash and as a matter of fact when it was through balancing accounts with Bowl-Mor the reserve account was not only exhausted but in fact showed a negative balance. It was in the red. Thus G.E. should be permitted to proceed against defendants particularly because G.E. had never physically reassigned the Contrucci lease to Bowl-Mor.

We find that at the time of the April 29, 1966, agreement between Bowl-Mor and G.E. the reserve not only covered the $57,062.91 but in fact note No. 11 was marked satisfied. Thus the note was satisfied and the basic obligation which the note represented had been satisfied. As will be noted later on it is not required that an obligation be paid in cash. Note No. 11 (Defendants' Exhibit "C") bears this legend—"Balance 3/16/65 $57,062.91. Proceeds of 4/29/66 agreement to clear deficiency $57,062.91. 0 balance 5/6/66. Paid in full 5/6/66."

We consider it unnecessary to discuss the principles of accord and satisfaction and novation (see discussion in 1 C.J.S. Accord and Satisfaction § 22 et seq.) which without more might dispose of this case since a new obligation was accepted by G.E. when it accepted the demand note of Bowl-Mor on July 23, 1964 which was paid by a charge against the reserve.

We find that G.E. has been paid albeit in part by a credit against Bowl-Mor's reserve which is a recognized manner of payment. See 70 C.J.S. Payment § 32.

"When so agreed or consented to payment may be made by the transfer of debits or credits or the application of deposits or funds of the debtor in the hands of the creditor or by the application of mutual indebtedness of the parties * * *"

See also, Marr v. Heggie, 317 Mass. 286, 58 N.E.2d 1 (1944).

This principle is particularly true in view of the fact that under the basic agreement of December 29, 1961, the title to the physical equipment was vested in G.E. and G.E. was under no obligation to repurchase any agreements. At the end of the lease period the equipment did not go to the lessee. G.E. was to offer it to Bowl-Mor under certain conditions and if Bowl-Mor refused it G.E. could sell it on the market. When G.E. repossessed the equipment it was placed in inventory financing.

G.E. argues that by the end of 1966 Bowl-Mor was bankrupt and by March of 1967 the reserve was exhausted and by December 31, 1970, G.E. had a negative balance with Bowl-Mor of over two million dollars and that the lease remains in the file and has never been reassigned. However, G.E. owned the equipment as we have noted and G.E. transferred the equipment to Bowl-Mor

2. The amount of the demand note which G.E. took from Bowl-Mor in the amount of $95,734.06 was fixed as follows: On July 21, 1964 the balance on the Contrucci account was $138,703.00. There was deducted from that figure the unearned portion of the plaintiff's purchase charge of $29,351.90. There was also deducted refund on the insurance policy of $4670.64 and a credit for the reserve hold back of $8946.40 leaving a total due G.E. of $95,734.06.

taking a new note for a new balance, then gave credits as the goods were sold and finally charged the balance of the debt against a reserve then sufficient to cover it. The fact that the lease was never reassigned is meaningless in our view because the equipment was gone and the debt was discharged even though not paid in cash.

We believe it to be fundamental that a creditor is entitled to only one recovery. Whether the payment of a debt by a third person is a purchase of the debt or an extinguishment of it depends upon the intention of the parties at the time the transaction occurs, P.L.E., Payment, § 2, p. 139. See Brown v. Marmaduke, 248 Pa. 247, 93 A. 1023 (1915). It might well be argued that Bowl-Mor repurchased the claim against Contrucci but in our view G.E. has no claim upon which to bring suit.

We will dismiss the counterclaim of the defendant as well. We heard no evidence sufficiently clear or concise upon which to base any finding that the defendants were damaged.

This opinion shall be considered to state the findings and conclusions required by Rule 52.